ORIGINAL

Approved: _____
MICHAEL D. LONGYEAR / DANIELLE R. SASSOON
Assistant United States Attorney

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

THOMAS LLOYD and
SHANE CRUZ,

              Defendants.

: **COMPLAINT**

: Violations of
: 21 U.S.C. 846; 18 U.S.C.
: §§ 1951, 924(c), and 2

: COUNTY OF OFFENSE:
: NEW YORK

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER MURPHY, being duly sworn, deposes and says that he is a Police Officer with the New York City Police Department, and charges as follows:

### COUNT ONE
(Narcotics Trafficking)

1.   On or about December 3, 2018, in the Southern District of New York and elsewhere, THOMAS LLOYD and SHANE CRUZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.   It was a part and an object of the conspiracy that THOMAS LLOYD and SHANE CRUZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.   The controlled substance that THOMAS LLOYD and SHANE CRUZ, the defendants, conspired to distribute and possess with the intent to distribute are mixtures and substances

containing a detectable amount of marijuana, in violation of
Title 21, United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

### COUNT TWO
(Use of a Firearm)

4.   On or about December 3, 2018, in the Southern
District of New York and elsewhere, SHANE CRUZ, the defendant,
and others known and unknown, during and in relation to a drug
trafficking crime for which they may be prosecuted in a court of
the United States, namely, the narcotics distribution conspiracy
charged in Count One of this Complaint, knowingly did use and
carry firearms, and, in furtherance of such crime, did possess
firearms, and did aid and abet the use, carrying, and possession
of firearms, which were brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i),
924(c)(1)(A)(ii), 924(c)(1)(A) (iii), and 2.)

### COUNT THREE
(Hobbs Act Robbery)

5.   On or about December 3, 2018, in the Southern
District of New York and elsewhere, THOMAS LLOYD, the defendant,
and others known and unknown, attempted to commit robbery, as
that term is defined in Title 18, United States Code, Section
1951(b)(1), and would and did thereby obstruct, delay, and
affect commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), to wit, LLOYD attempted to commit an
armed robbery of an individual believed to be engaged in
narcotics trafficking in New York, New York and aided and
abetted the same.

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT FOUR
(Firearms Use)

6.   On or about December 3, 2018, in the Southern
District of New York and elsewhere, THOMAS LLOYD, the defendant,
and others known and unknown, during and in relation to a drug
trafficking crime for which they may be prosecuted in a court of
the United States, namely, the narcotics distribution conspiracy
charged in Count One of this Complaint and during and in

2

relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the attempted Hobbs Act robbery charged in Count Three of this Complaint, knowingly did use and carry firearms, and, in furtherance of such crimes, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which were brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A) (iii), and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

7.    I am a Police Officer with the New York City Police Department ("NYPD").  I have been personally involved in the investigation of this matter.  This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement personnel and other individuals.  Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8.    As set forth in greater detail below, on or about December 3, 2018, THOMAS LLOYD and SHANE CRUZ, the defendants, and others known and unknown, possessed firearms that were brandished and discharged in connection with a prearranged meeting to buy a large quantity of marijuana.  *See infra* ¶¶ 11(a)-(b).  In addition, before the sale of marijuana, LLOYD and others known and unknown attempted to rob the marijuana dealer and discharged a firearm during the course of that attempted robbery.  *See infra* ¶¶ 11(c)-(d).

9.    Based on my conversations with other law enforcement officers, my review of law enforcement reports, and my personal participation in this investigation,  I learned the following in substance and in part:

a.    On or about December 3, 2018, a 911 dispatcher received a call reporting that gun shots were fired inside a building located at 134 Haven Avenue in New York, New York ("Building-1").  I, along with other officers of the NYPD, entered Building-1 and encountered SHANE CRUZ, the defendant, in the stairwell of Building-1.  CRUZ stated, in substance and in

part, that he had been shot in the arm.  As officers removed
CRUZ's jacket in order to inspect his injury, officers recovered
a .38 caliber revolver from the pocket of CRUZ's jacket.  CRUZ
told officers that he was shot in Apartment 3A of Building-1
(the "Apartment").

b.   I, and other NYPD officers, approached the
door of the Apartment and heard what sounded like a scuffle
inside.  I knocked on the door of the Apartment and announced
that we were the police.  The front door of the Apartment opened
slightly and I and the other NYPD officers entered the
Apartment.

c.   Upon entering the Apartment, I saw THOMAS
LLOYD, the defendant, and another individual ("Individual-1")
standing in the entry area of the Apartment and both men
appeared to be bleeding.

d.   I observed on the floor of the entry into
the Apartment what appeared to be a large, clear vacuum-sealed
plastic bag that looked like it contained smaller clear plastic
baggies each filled with a green leafy substance.  Based on my
training and experience, the green leafy substance in those
baggies appeared to be marijuana and the manner in which it was
packaged – in separate baggies – appears to be for resale or
distribution purposes.

e.   THOMAS LLOYD, the defendant, stated that he
had been shot in the neck and needed an ambulance.  NYPD
officers and paramedics removed LLOYD from the scene and took
him to the hospital.  Individal-1 appeared to be bleeding from a
wound on Individual-1's head.

f.   I walked inside the Apartment and observed
another individual ("Individual-2") lying on the floor of the
Apartment's living room.  Individual-2 stated, in substance and
in part, that he had been struck in the back of the head by an
object.  In addition, I observed what appeared to be an opened
blue laundry bag on the floor of the living room of the
Apartment, and the bag contained what appeared to be plastic
vacuum-sealed bags containing a green leafy substance.  I
further observed a .22 caliber pistol on a table in the living
room of the Apartment.

g.   I further observed inside the Apartment a
hall closet with the door half open, and inside the closet in

plain view, additional plastic baggies containing a green leafy substance.

        10.   Based on my conversations with other law enforcement officers, I am aware that Individual-1 identified himself as a resident of the Apartment and provided consent to search the Apartment.  Based on my review of police reports and my conversations with other NYPD officers, I understand that NYPD officers recovered the following from the Apartment:

                a.   Approximately fifteen pounds of a green leafy substance;

                b.   Approximately one pound of what appears to be mushrooms;

                c.   Approximately 22 grams of a white powdery substance that appears to be cocaine;

                d.   Approximately $15,000 of United States currency; and

                e.   Approximately one fired bullet retrieved from the front door of the Apartment.

        11.   Individual-1 and Individual-2 agreed to be interviewed by members of the NYPD.  Based on my review of the interviews, which were video recorded, and my conversations with the officers who interviewed Individual-1 and Individual-2, I learned the following in substance and in part:

                a.   Individual-1 stated that Individual-1 communicated with SHANE CRUZ, the defendant, via FaceTime and CRUZ was going to bring others to the Apartment to buy marijuana.

                b.   Individual-1 stated that CRUZ arrived at the Apartment with THOMAS LLOYD, the defendant, and another individual ("CC-1").  CRUZ, LLOYD, and CC-1 inspected the marijuana, and CC-1 stated that CC-1 would go down to CC-1's car to get the money to buy approximately one pound of marijuana.

                c.   Individual-1 further stated that while CC-1 left the Apartment, LLOYD went into the bathroom of the Apartment.  LLOYD then exited the bathroom and stated, in substance and in part that CC-1 was at the front door. Individual-1 opened the door to the Apartment and saw that CC-1

had a firearm. Individual-1 attempted to close the door of the Apartment, and CC-1 fired the gun. At or about the same time, LLOYD also began firing a gun. A struggle among the occupants of the Apartment – CRUZ, LLOYD, Individual-1 and Individual-2 – ensued, and CRUZ and LLOYD were shot, while Individual-1 and Individual-2 each were pistol whipped in their heads. CC-1 never re-entered the Apartment.

       d. Individual-2 stated that Individual-2 was playing a video game in the Apartment. Individual-2 did not pay attention to what was going on until Individual-2 heard gunshots and saw LLOYD with a gun in his hand. Individual-2 stated that after the struggle, Individual-2 found the .22 caliber gun on the ground and placed it on the table in the living room.

       12. Based on my participation in this investigation, I am aware that other NYPD officers reviewed surveillance video captured from both Building-1 and surrounding buildings. Based on my conversations with other NYPD officers, I have learned that surveillance video depicts the following, in substance and in part:

       a. THOMAS LLOYD and SHANE CRUZ, the defendants, along with CC-1 entered Building-1 together. Later, CC-1 can be seen exiting the building holding a bag. CC-1 walked towards a parked car on the street in front of Building-1. CC-1 and three other individuals (not including LLOYD and CRUZ) then entered Building-1. Later, CC-1 and the three other individuals exited Building-1 and separated. It appears that CC-1 dropped an object next to a vehicle parked outside Building-1.

       13. Based on my conversations with other NYPD officers who responded to Building-1, I have learned that a .357 magnum revolver was recovered underneath a vehicle parked in front of Building-1.

WHEREFORE, the deponent respectfully requests that THOMAS LLOYD and SHANE CRUZ, the defendants, be imprisoned or bailed, as the case may be.

CHRISTOPHER MURPHY
POLICE OFFICER
NEW YORK CITY POLICE DEPARTMENT

Sworn to before me this
4th day of December, 2018

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7